R. C. TAYLOR et al. v. CEDRIC SCHLEMMER and VERA SCHLEMMER, Appellants.—No. 39031.—183 S. W. (2d) 913.

Division One, November 6, 1944.

Rehearing Denied, December 4, 1944.

688

*Walter, Hecker & Walter* and *Elmer W. Oehler* for appellants.

690

*Sylvan Agatstein* for respondents R. C. Taylor, Katherine Taylor, Argo Landau, Edna Landau, William Schield, Emma Schield, Richard T. Shelton and Mildred Kotany; *Joseph F. Holland* and *William R. Davis* for respondent City of St. Louis.

BRADLEY, C.—Action to enjoin violation of a St. Louis zoning ordinance. Injunction went as prayed and defendants appealed. The cause was commenced by property owners affected and the City of St. Louis was thereafter permitted to join as a party plaintiff. Defendants, among other defenses, challenged the constitutional validity of the ordinance, hence the appeal to the supreme court.

The individual plaintiffs own and reside in their respective dwellings at 4352, 4384, 4416, 4434, and 4466 Westminster Place. Defendants own the property at 4421 Westminster Place, which property is operated by them as a rooming house—multiple dwelling. They do not reside therein.

The lots in the 4300 and 4400 blocks, Westminster Place, were, we infer, originally restricted by deed to one family dwellings, but deed restrictions expired in 1941, and defendants acquired their property

in 1942. Ordinance No. 35003, approved April 26, 1926, the general zoning ordinance, established five use districts designated as (1) residence district; (2) multiple dwelling district; (3) commercial district; (4) industrial district; and (5) unrestricted district.

·The 4300 and 4400 blocks, Westminster Place, were, by ordinance No. 35003, placed in the multiple dwelling district, but ordinance No. 36797, approved April 11, 1928, and hereinafter referred to as the amending ordinance, amended ordinance No. 35003 to extend the residence district area to include the 4300 and 4400 blocks, Westminster Place. The two blocks are bounded on the east by Taylor Avenue, on the west by Boyle Avenue. The north and south boundaries are the east and west alleys north and south of the lots fronting on Westminster Place. It is conceded that defendants' property is being used as multiple dwelling property. Defendant Cedric Schlemmer testified that there are eight units in his house at 4421 Westminster Place, and that when he purchased there were 16 people living in the house and that he did not know it was in the single family dwelling zone.

Defendants contend that the amending ordinance is void for the reasons: (1) That there was no proper notice of a hearing thereon; (2) that the amending ordinance contravenes Sec. 13, Art. 4, City Charter, providing that no bill, except a general appropriation bill, shall contain more than one subject which shall be clearly expressed in its title; and (3) that the amending ordinance is unreasonable, arbitrary and confiscatory and takes defendants' property without just compensation and without due process contrary to Secs. 20, 21, 30, Art. 2, Constitution of Missouri, and contrary to the 14th Amendment, Constitution of the United States.

At the time of the passage of the amending ordinance in 1928, there was no ordinance prescribing a form of notice and publication thereof to be given for a hearing on an ordinance amending the general zoning ordinance. Such an ordinance was not passed until 1932. The only requirement as to notice of hearing at the time of the passage of the amending ordinance was in what is termed the city zoning enabling act (Laws 1925, p. 309), and now Sec. 7415, R. S. 1939, Mo. R. S. A., Sec. 7415. Sec. 7415 provides:

"The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed. However, no such regulation, restriction, or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to· be heard. At least 15 days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality."

694

· · The City Journal is published weekly, and in the issue of January 17, 1928, the following notice was published:

"NOTICE

"A public hearing will be held by the legislative committee of the board of aldermen of the City of St. Louis, in the chamber of the board of aldermen, 230 City Hall, Wednesday, February 15th, 1928, at 3:00 P. M., for the purpose of considering the following bills: . . . Board Bill No. 608: An ordinance amending ordinance number thirty-five thousand and three, approved April twenty-sixth, 1926, relating to zoning, by making extensions to the residence district shown on the use zone map accompanying said ordinance, and repealing ordinance number thirty-six thousand one hundred eighty-nine."

There was no other notice and the record is silent as to appearances at the hearing. Defendant contends that such notice as given was no notice at all. Plaintiffs, on the other hand, argue that such notice was sufficient, but if not, plaintiffs say that defendants who purchased their property 14 years after the amending ordinance was passed, should not now be permitted to assert invalidity because of such alleged notice defect "to the detriment of persons who have relied and acted upon the presumed validity of a regularly enrolled law." And plaintiffs say: "If such an attack were feasible, the general zoning law of the City of St. Louis, ordinance No. 35003, would be likewise vulnerable because the notice of public hearing in connection therewith was in the same form and published in like manner as was the notice of this amendment."

There are 54 residence buildings in the two blocks here concerned; all are large residences, built "about the turn of the century." The last one was built in 1910 or 1912, and from 1940 to 1944, six or seven of these old homes were purchased for single residence property. Quite a few of the old residents, or their descendants, still occupy these old homes. Only defendants and four others, against whom suits are pending, have sought to violate the amending ordinance classifying the area as a residence district. All these homes, for the most part, have been continuously occupied as private residences by families prominent in the social and business life of the city.

In Ninth Street Improvement Co v. Ocean City, 90 N. J. L. 106, 100 Atl. 568, the validity of the building code of the defendant city was challenged on the ground of irregularities in the procedure leading to its adoption. The building code was held valid on a ground not necessary to state here, and the court said:

"But aside from that consideration, it cannot be overlooked that the attack upon the ordinance in question was not undertaken until over 12 years had elapsed since the date of its adoption. During that interval it is reasonable to assume that the citizens of the municipality affected by the provisions of this ordinance, regulating, as it specifical-

ly expresses, 'the manner of building dwelling houses, and other buildings', have expended their means and conformed their building operations to comply with its provisions, and have fixed their status as property owners accordingly. In such a situation, this prosecutor is too late to be heard to complain of alleged informalities and irregularities in the procedure, which led to its adoption.''

Benequit v. Borough of Monmouth Beach et al., 125 N. J. L. 65, 13 Atl. (2d) 847, was to review the conviction of Benequit for the violation of a zoning ordinance challenged on the ground that ''it had not been published in a qualified newspaper as required by statute.'' The court found no merit in such contention, stating [13 Atl. (2d) l. c. 849]:

''This ordinance had been in effect for over nine years and presumably citizens had conformed to its provisions and their status as property owners became fixed accordingly. . . . Where there is no laches, however, and an ordinance is attacked within a reasonable time after its enactment, formal or procedural defects will not be tolerated and will cause it to be set aside.''

The present cause was filed August 9, 1942; the amending ordinance, as appears, supra, was approved April 11, 1928; hence the amending ordinance, so far as appears, has been generally accepted and acted upon as the law for some 14 years. ''The presumptions in favor of the validity of a statute are ordinarily only prima facie, but they have been declared conclusive where the statute has long been accepted and recognized as law.'' 59 C. J., p. 623, Sec. 183. In the situation, we do not think that defendants should be heard to challenge the validity of the amending ordinance on the procedural ground here relied upon after the lapse of 14 years.

 Is the amending ordinance void because in conflict with Sec. 13, Art. 4, City Charter, which provides, as appears, supra, that no bill, except a general appropriation bill, shall contain more than one subject which shall be clearly expressed in its title? The title to the amending ordinance is:

''An ordinance amending ordinance number thirty-five thousand and three, approved April twenty-sixth, nineteen hundred twenty-six, relating to zoning by making extensions to the residence district shown on the use zone map accompanying said ordinance, and repealing ordinance number thirty-six thousand one hundred and eighty-nine.''

This assignment requires no extended discussion; we do not think that there is any substantial merit to it. See St. Louis v. Warren Commission and Inv. Co., 226 Mo. 148, l. c. 157, 126 S. W. 166; State ex rel. Garesche v. Roach, 258 Mo. 541, l. c. 557, 167 S. W. 1008; City of St. Louis v. United Rys. Co., 263 Mo. 387, l. c. 451, 174 S. W. 78.

 Defendants contend that the amending ordinance is unreasonable, arbitrary, and confiscatory, and takes their property without

just compensation and without due process, contrary to Secs. 20, 21, 30, Art. 2, Constitution of Missouri, and contrary to the 14th Amendment, Constitution of the United States. Secs. 20, 21, and 30, Art. 2, Constitution of Missouri, deal, respectively with taking private property for private use, taking private property for public use, and with due process. The 14th Amendment, Constitution of the United States also deals, among other things, with due process.

The constitutional validity of the general zoning ordinance of St. Louis, approved April 26, 1926, in its general scope, was ruled in State ex rel. Oliver Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S. W. 720, but when applied to any particular land, constitutional validity of a zoning ordinance depends on the particular facts applicable. Glencoe Lime & Cement Co. v. City of St. Louis, 341 Mo. 689, 108 S. W. (2d) 143, l. c. 144. As stated, the area here involved was classified in the general zoning ordinance of 1926, as a multiple dwelling use district, as was the immediate bounding area. Defendants allege in their answer (and the evidence supports):

"There have been no changes in the character of the buildings and in the conditions in the district (Westminster Place) bounded on the west by the east line of Taylor Avenue, on the east by the west line of Boyle Avenue, on the south by the east and west alley between Westminster Place and McPherson Avenue, and on the north by the east and west alley between Westminster Place and Olive Street, or in the conditions of the surrounding neighborhood from the conditions thereof existing at the time the Zoning Commission of the City of St. Louis made its extended study and investigation, held its public hearings and ▮▮▮▮ made its final report to the board of aldermen of the City of St. Louis recommending the boundaries of the various use districts in the City of St. Louis, the time of the public hearings before the committee on legislation of the board of aldermen of the City of St. Louis and the passage by the board of aldermen of the original general zoning ordinance No. 35003, approved by the Mayor of the City of St. Louis on April 26th, 1926, by which ordinance the said district bounded as hereinabove described was classified as a multiple dwelling use district."

And defendants contend that there was no reasonable basis in factual conditions to justify the change of classification different to that of the surrounding property, and that such change unreasonably deprives defendants from using their property for the same purposes for which similar buildings are used in the adjacent area. Defendants say that the amending ordinance was an act of spot zoning, sometimes termed island zoning, and as supporting the contention that the ordinance is unreasonable and void, defendants cite Mueller v. C. Hoffmeister Undertaking & Livery Co., 343 Mo. 430, 121 S. W. (2d) 775; Tews et al. v. Woolhiser, 352 Ill. 212, 185 N. E. 827; City of Youngstown et al. v. Kahn Bros. Bldg. Co., 112 Ohio St. 654, 148 N. E. 842, 43

A. L. R. 662; State ex rel. Scandrett et al. v. Nelson et al., 240 Wis. 438, 3 N. W. (2d) 765. The facts in neither of these cases were so similar to the present facts as to make these cases in point.

The enabling act, Secs. 7412 et seq., R. S. 1939, Mo. R. S. A., Secs. 7412 et seq. "contemplates the same careful, serious, and intelligent consideration of an amendment to a zoning ordinance as is required in the preparation and enactment of an original ordinance on zoning." Wippler v. Hohn et al., 341 Mo. 780, 110 S. W. (2d) 409; Mueller v. C. Hoffmeister Undertaking & Livery Co., supra. It is primarily the duty of the city, in enacting a zoning ordinance, to say in what district any area in the city should be placed, and, if a zoning classification is reasonably doubtful, the judgment of the court will not be substituted for the judgment. of the city. Mueller v. C. Hoffmeister Undertaking & Livery Co., supra.

It cannot be said in fairness that the evidence in the present record establishes that the amending ordinance as to reasonableness is even doubtful. There is no evidence at all that it is arbitrary or confiscatory. In other words, there is no evidence to support defendants' contention that the ordinance is void on constitutional grounds as claimed by defendants.

Defendants also make the point that the Building Commissioner was a necessary party plaintiff. That point is not stressed, and no authority cited which supports it.

The judgment should be affirmed, and it is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.