NINTH STREET IMPROVEMENT COMPANY, PROSECUTOR,
v. CITY OF OCEAN CITY, RESPONDENT.

Argued November 10, 1916—Decided March 21, 1917.

1. By the provisions of section 8 of *Pamph. L.* 1911, *p.* 471, commonly known as the "Walsh act," the adoption by any city of the provisions of that act results in the confirming and validating of such local legislation as the city governing body had passed and which is then in operation in the municipality.

2. A prosecutor of a writ of *certiorari* is too late to be heard to complain of alleged informalities and irregularities in the procedure of the adoption of a building code ordinance twelve years after its adoption, and under which ordinance citizens of the municipality, affected thereby, have expended their means and conformed their building operations to comply with its provisions.

On *certiorari* removing ordinances of Ocean City.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *Clarence L. Cole* and *Babcock & Champion.*

For the respondent, *Andrew C. Boswell* and *W. Holt Apgar.*

The opinion of the court was delivered by

MINTURN, J. The case presents the following state of facts, as contained in the stipulation of counsel.

Ocean City is a city having less than twelve thousand population, and is operating under an act approved March 24th, 1897, entitled "An act relating to and providing for the government of cities in this state containing a population of less than twelve thousand inhabitants." *Pamph. L.* 1897, *p.* 46. The city has also adopted the Walsh act.

The Ninth Street Improvement Company was incorporated May 31st, 1916, the certificate being recorded in the clerk's office of Cape May county on June 8th, 1916.

The building code, in addition to what is shown by the return, contains the following: "Passed at an adjourned regular meeting of the common council this seventh day of March, A. D. 1904, George O. Adams, President of Council, certified to this seventh day of March, A. D. 1904, T. Lee Adams, City Clerk, approved this eighth day of March, 1904, Joseph G. Champion, Mayor," and the amendment to the code contains the following: "Adopted this sixth day of April, A. D. 1908, Harry G. Stanton, President of Council, certified to this sixth day of April, 1908, T. Lee Adams,

City Clerk, approved this seventh day of April, 1908, L. M. Cresse, Mayor."

The reasons filed by the prosecutor are intended to attack the validity of the ordinances in question, as well as their reasonableness. The building code was passed on March 7th, 1904, in pursuance of the provisions of the charter of the city. The Walsh act was passed in 1911. *Pamph. L.* 1911, *p.* 462. Its adoption by the city of Ocean City resulted in confirming and validating such local legislation as the city governing body had passed, and which was then operative in the municipality. Whatever formal defects may have existed in the procedure necessary to pass such ordinance were cured by the adoption, *ipso facto,* of the new legislation. *Pamph. L.* 1911, *p.* 471, § 8.

But, aside from that consideration, it cannot be overlooked that the attack upon the ordinance in question was not undertaken until over twelve years had elapsed since the date of its adoption. During that interval it is reasonable to assume that the citizens of the municipality affected by the provisions of this ordinance, regulating, as it specifically expresses, "the manner of building dwelling-houses and other buildings," have expended their means and conformed their building operations to comply with its provisions, and have fixed their status as property owners accordingly.

In such a situation, this prosecutor is too late to be heard to complain of alleged informalities and irregularities in the procedure which led to its adoption. *State, Noe,* v. *West Hoboken,* 37 *Atl. Rep.* 439; *State, Zabriskie,* v. *Hudson City,* 29 *N. J. L.* 115; *Budd* v. *Camden,* 69 *Id.* 193; *Hopewell* v. *Flemington, Id.* 597.

We think these considerations dispositive of the objections urged against the ordinance. The attack upon the garage ordinance is based upon the contention that it is *ultra vires.*

The provisions of the Walsh act, it is assumed, presented the basic law for the adoption of this ordinance. Section 8 of that act provides that the city adopting the act shall have power to enact and enforce "all ordinances necessary for the protection of life, health and property;" to declare, pre-

vent and abate nuisances, and to preserve and enforce "the good government, general welfare, order and security of the city," by the passage of ordinances consonant with "the laws applicable to all cities of this state," and the "provisions of the constitution."

These provisions manifestly convey in unmistakable terms a liberal concession of governmental authority in aid of the reasonable and constitutional exercise of the police power by the municipalities adopting the provisions of the act.

The definition and limitation of that power under our constitutions, state and federal, have presented such a prolific subject for judicial investigation and discussion, that no more need be said upon the topic here than that in our judgment the erection and management of a garage, with all its incidental dangers and inconveniences to adjoining property and public travel, are manifestly matters properly cognizable by the municipal governing body as a subject for regulation in the public interest, under the police power expressly conferred, as in this instance, or reasonably implied *ex necessitate* in aid of the general welfare against dangers recognized and obvious, to persons and property. *Slaughter House Cases,* 16 *Wall.* 36; *Cooley's Const. Lim.* 227.

We think that the ordinances under review should be affirmed, with costs.